# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 16-2795D

_Alan M. Kaufman_ , Plaintiff(s)

v.

_Mark Burnett Game Shows Inc_, Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon _Alan Kaufman Pro Se._
~~plaintiff's attorney~~, whose address is _89 Needham St. #2139 Newton MA 02461_, an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Judith Fabricant** ~~Barbara J. Rouse~~, Esquire, at Boston, the _8th_ day of
_September_ , in the year of our Lord two thousand _16_ .

_Michael Joseph Donovan_

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 20M-10/11

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. *16-2795D*

*Alan M. Kaufman* , Plaintiff(s)

v.

*Mark Burnett Game Shows Inc* , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon *Alan Kaufman Pro Se.*

~~plaintiff's attorney,~~ whose address is *89 Needham St. #2139 Newton MA 02461* an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Judith Fabricant, ~~Barbara J. Rouse~~, Esquire, at Boston, the *8th* day of *September*, in the year of our Lord two thousand *16*.

*Michael Joseph Donovan*

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 20M-10/11

SUFFOLK COUNTY SUPERIOR COURT
SUFFOLK COUNTY COURTHOUSE
12TH FLOOR
3 PEMBERTON SQUARE
BOSTON, MA 02108

CASE # : 16-2795D

**PLAINTIFF**

ALAN KAUFMAN, an individual                    **COMPLAINT**

v.                                             **JURY TRIAL REQUESTED**

AMERICAN BROADCASTING COMPANY
INC, a New York Corporation,
MARK BURNETT PRODUCTIONS, INC.,
Corporation d/b/a/ Mark Burnett Game Shows, Inc.
SONY PICTURES TELEVISION, INC. a Delaware
Corporation, COMCAST CORPORATION, a Philadelphia
PA, Corporation.


**DEFENDANTS**

**DELIVERED VIA CERTIFED MAIL**

------------------------------

COMES NOW, Plaintiffs, ALAN KAUFMAN, (hereinafter, "Kaufman" or
"Plaintiff" and "NUBRELLA" (hereinafter, 'Nubrella" or "Plaintiff") and
claims against Defendants, MARK BURNETT PRODUCTIONS, INC
(hereinafter "Burnett" or "Defendant") SONY PICTURES TELEVISION,
INC (hereinafter "Sony" or "Defendant") AMERICAN BROADCASTING

TELEVISION, INC (hereinafter "ABC" or "Defendant") COMCAST INC, (hereinafter "Comcast") and claims as follows:

## RIGHT TO BRING LITIGATION

The plaintiff hereby requests the court to declare the agreement between the parties (attached agreement) to be **UNCONSCIONABLE**. "An unconscionable contract is one that is so one sided that it is unfair to one party and therefore unenforceable under law. It is the type of contract that leaves one party with no real, meaningful choice, usually due to major differences in bargaining power between the parties. This agreement is between the Defendants, whom are some of largest and most powerful broadcasting businesses in the country prepared the agreement to be provide to a single entity a single entity "person" where not one item within the contract was considered negotiable. Furthermore, in sections 41 and section 43 attempts to force the plaintiff in capital letters to sign off on having any legal remedies whatsoever. To include such language should immediately indemnify the contract as unconscionable thus unenforceable."

## STATUTE OF LIMITATIONS

Furthermore, a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

These new claims were not present when the parties reached a prior settlement related to different issues. The plaintiff could not have predicted this new claim would occur and are STILL ONGOING.

## JURISDICTION

1.  Plaintiff Alan Kaufman is an individual residing in the Suffolk County, Massachusetts.

2.  Plaintiff Nubrella is a Florida Corporation.

3.  Defendant Burnett is a California Corporation doing business under Mark Burnett Game Shows, Inc.

4. Defendant "ABC" is a New York State corporation.

5. Defendant "Sony" is a California corporation.

6. Defendant "Comcast" is a Pennsylvania corporation.

## FACTS

7. In 2009 Kaufman was **approached** by the defendants to be a potential participant on a new TV reality show "Shark Tank" to air on ABC.

8. The plaintiff went through numerous Skype interviews as well as an extensive background check before chosen to participate.

9. The defendant flew to Los Angeles in August of 2009 to be filmed. It was not guaranteed though he would be chosen to be aired. The defendants chose to air the plaintiff's episode in season one on February 4th 2010 at 9pm on ABC.

10. The plaintiff accepted a $200,000 offer from Sharks Daymond John and Kevin Harrington for $100,000 each in return for 51% of the plaintiff's company.

11. Shortly thereafter to build help credibility of this new show, to the demise of the plaintiff and sole benefit of the defendants the plaintiff was remanded to participate in what was to be a fabricated "follow up". This so called "follow up" was to show the audience not only are the Sharks following through with their proposed investment but playing an additional role in trying to help the companies invested in build, grown distribution by utilizing their clout and contacts.

12. Since it was only a matter of days/months since the actual filing of episodes and negotiation of investments there was little time for the Sharks to negotiate any distribution agreements with perspective national retailers.

13. Thus in the plaintiff's case this follow up was completely "pre-scripted, arranged and fabricated" with The Sharper Image Companies by Mr. Daymond John in New York City.

14. Mr. Daymond John was instructed be defendants to find a so called distribution "partner" for the plaintiff for the sole purpose of making the audience believe the Sharks indeed did **invest** but also were playing an **integral role in helping** their invested companies.

15. Due Mr. John's lack of ability and connection to align with a valid prominent national retailer he was left with pursuing a falsified partnership with the recent bankrupt Sharper Image company.

16. Note: in 2001 the Sharper Image companies declared bankruptcy and closed all of its 450+ retail locations. They were forced into bankruptcy and were facing a massive class action law suit brought by millions of consumer who purchased what was later identified as a defective air purifier sold by Sharper Image.

17. After the bankruptcy a private party bought the rights to the brand name "Sharper Image" with the sole intent of building an e-commerce platform believing there was still merit in the name.

18. When approached the Sharper Image companies were delighted with the opportunity to get their name on national TV helping show the consumer the brand was still in business. They had no concerns about the "fabricated" deal put together by the defendants and were willing participants.

19. The plaintiff was ***adamant*** about not wanting to participate in not only a "fabricated" distribution deal but also associating its new brand with one of the most failed and hated retailers in the country. Associating its name with such a failed brand would only ruin the plaintiffs brand and ability to be successful in the marketplace on its own merits.

20. The Sharks and the plaintiff never came to an agreement that was accepted on the show. With no just cause the Sharks just ignored their commitment investment offered on the show.

21. The plaintiff settled with defendant "Sony" for $20,000.

22. At the time of the settlement agreement the current claim(s) could not be litigated as they were not present nor could be predicted.

23. The defendants began selling re-runs after this settlement agreement was reached.

24. Since airing on February 4TH 2010, the plaintiff's episodes have rerun an on CNBC and other international broadcasting networks for 6+ years. The plaintiff is unaware of the international networks and will be able to prove this after discovery negligence

# COUNT ONE
# NEGLIGENSE

25. These reruns are and have been causing irreparable harm to the plaintiff's business for numerous reasons.

26. First, in 2012 after several years on the market the plaintiff through significant feedback returned to the design table and overhauled its patented hands-free and wind -resistant new weather protection device/umbrella.

27. Plaintiff's new design offered significant enhanced features resulting in a higher cost thus a higher retail price.

28. Unfortunately, in the plaintiff's episode the defendants chose to air a price the plaintiff mentioned in his pitch for its original design.

29. This has been nothing less than a massive problem for the plaintiff since introducing its new design at a higher price and even on the older design the defendant couldn't substantiate that price.

30. Whenever the plaintiff's episode re-runs the audience does not know the original air date nor that the company has changed its product offering/design. Since they are unaware of the time and changes they send negative and sometimes threatening emails. They claim; fraud, bait and switch and threats to call the show Shark Tank and Shark Daymond John to complain about the fact he company is not honoring the aired price of $29.99.

31. This has severely damaged the plaintiff's reputation, brand image and revenues. It has led to negative internet reviews wherever a consumer can post one especially through social media. Some even go as far to threaten to contact media who have since done a story on the plaintiff's new design.

32. The audience is unaware when the plaintiff's episode originally ran and 100% believes everything they view on the show to be **true and accurate**. This is supported by the fact that the show runs on one of the largest network in the world – ABC!

# COUNT TWO

# BREACH OF FIDUCIARY DUTY and

# COVENANT OF GOOD FAITH & FAIR DEALING

33. The defendants would never reveal to the audience to help the plaintiff that the "follow up" episode was fabricated and pre-scripted!

34. The defendants didn't even post on the re-run, as other shows do the "original air date of Feb.4th, 2010" in one of the corners of the broadcast. This would at the very least notify the audience this episode is years old and changes may have taken place.

35. This continued "false & misleading" episodes being re-run on CNBC and other networks continues to cause severe harm to the plaintiff.

36. Fundraising continues to be a problem for plaintiff due to these re-runs 6 years after initial air date.

37. The additional distribution fabrication has also severely hampered the plaintiff's ability to secure distribution/retail partners. Most all whom the plaintiff has met with have seen the plaintiff's Shark Tank follow up and assume that TV doesn't lie and indeed the plaintiff has partnered with The Sharper Image companies. Due to Sharper Images' serious litigation issues, it's recent bankruptcy filing and closing of all its stores has led to no one wanting to be associated with the brand name.

38. To attempt to alleviate this damage the plaintiff has requested on numerous occasions to the defendants to allow the plaintiff to come back on the show to provide updates and accurate information to the audience.

39. This would allow the audience to have the real and current facts about the plaintiff's business, new product offerings and current selling price and stop the severe damage they are causing by airing significantly older episodes.

40. The plaintiff can't stop Shark Tank from continuing to re-run the plaintiff's episodes.

41. The plaintiff was unaware that the show would re-sell the Shark Tank episodes all over the world thus ***locking*** in the plaintiff to its original concept and pricing for years to come.

42. The defendants have never attempted to communicate with the plaintiff notifying them that they have sold the rights of the show to other networks. They did this at their own discretion purely to maximize revenues and profits all with no concern what affect this may have on the plaintiff's business.

43. The defendants have never offered the plaintiff any royalties or monies generated by the sale of the plaintiff's episodes. All gains were solely shared by the defendants and Sharks.

44. The plaintiff has estimated just CNBC alone cycles through all of its Shark Tank episodes at least once per quarter.

45. Thus the plaintiff has estimated approximately 8 re-runs per year times 5 year or 40 re-runs just with CNBC alone.

46. The plaintiff is not familiar with how royalties are calculated for the participants of a TV show so the plaintiff has estimated an amount per show yet requests the right to alter this amount after discovery should more defined information become available.

47. The plaintiff has calculated a royalty rate of $5,000 per re-run. This does not include the damage the plaintiff is suffering from challenging fund raising efforts to distribution channels.

48. CNBC continues today to run reruns so this complaint still exists.

49. The defendants have received significant financial returns due to selling the episodes of it's extremely popular hit show Shark Tank due to its popularity and ***ratings.***

50. The networks have also significantly made financial gains due to selling commercials on this highly rated TV show.

51. The defendants have never shared anything with the plaintiff whatsoever in reference to when and where their re-runs would run, how long or offered to share financial gains.

52. They have merely ignored plaintiff's attempt to be re-aired on the show and the damages these re-runs have caused on the plaintiff's business.

WHEREFORE, Plaintiffs pray this Honorable Court will find in favor of plaintiffs and against defendants as follows:

a.  For actual damages of $500,000 plus interest.

b.  For any consequential damages in the amount to be determined at trial

c.  For compensatory in the amount to be determined at trial

d.  For such punitive damages as may be provided by law

e.  For such other just and equitable relief as this Court may deem proper

# CERTIFICATE OF SERVICE

A copy of this answer was mailed (CERTIFIED) to all parties or their attorney on the 5th day of September 2016.

Signed _____

**Alan Kaufman**

**Plaintiff Pro Se**


AMERICAN BROADCASTING COMPANY, INC
Mr. Channing Dungey
President
77 W. 66th Street
New York, New York 10023

SONY PICTURES TELEVEISION INC
10202 West Washington Blvd.
Sony Pictures Plaza #1132
Culver City, CA 90232-3195

MARK BURNETT GAME SHOWS INC
3000 Olympic Blvd.
Santa Monica, CA 90404

NBC UNIVERSAL "CNBC", both a subsidiary of COMCAST
COMCAST CORPORATION
Comcast Center
1701 JFK Boulevard
Philadelphia, PA 19103

This packaging is the property of the U.S. Postal Service and is provided solely for use in sending Priority Mail. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; April 2015; All rights reserved.

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.



**UNITED STATES
POSTAL SERVICE**®

**FROM:**

Alan Kaufman
89 Needham St. #2139
Newton, MA. 02461

**TO:** Mark Burnett Game Shows
3000 Olympic Blvd.
Santa Monica, CA. 90404

RETURN RECEIPT
REQUESTED

**VISIT US AT USPS.COM**®
ORDER FREE SUPPLIES ONLINE

EP14F Apr 2015

PRESS FIRMLY TO SEAL

$12.45

90404

1006

7015 1520 0001 0512 0129

**CERTIFIED MAIL**®

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**USPS TRACKING™ INCLUDED***

**INSURANCE INCLUDED***

**PICKUP AVAILABLE**

* Domestic only

AT RATE ENVELOPE
E RATE ★ ANY WEIGHT*

